on behalf of the people, Mr. Scott Jacobs. Thank you, Mr. Kirkham, may I proceed? May it please the court and counsel. Good morning, Your Honors. My name is Bruce Kirkham and I represent the defendant appellant, Mr. Frank Hill, today. Mr. Hill was convicted of first degree murder in this case by a jury that heard a vast amount of wrongly admitted verbal, written, and emailed hearsay statements by the victim in this case, Ms. Karen Pearson. And the jury reached this verdict after the trial court improperly instructed the jury, both during the presentation of evidence and during its final instructions to the jury, that it could consider these statements as evidence of the defendant's motive to commit murder. The trial court ruled following the pre-trial motion of limiting that these statements could be admitted under the state-of-mind exception to the hearsay rule. And the state-of-mind exception allows admission of a statement by an out-of-court declarant to show the state-of-mind of that declarant at the time the statement was made. Are you arguing that the standard of review is de novo in this situation? I am arguing that, Your Honor. I know that the traditional standard of review for admission of evidence and evidentiary questions is abuse of discretion by the trial court. But my position is that Judge Sheldon just got the law wrong. This is a question of law. These hearsay statements are inadmissible as a matter of law. When there is an error of law involved in the evidentiary ruling, it no longer becomes an abuse of discretion standard. It becomes a de novo standard of review. But are we applying the law to the facts? I mean, isn't that what's involved? And therefore, I'm sorry, right, and therefore is then the standard of review in that case would be abuse of discretion. But the judge made these rulings and determined that they were admissible based on a pre-trial written motion and consideration of law and came out in the wrong position as a matter of law. I think it's a de novo review and I would encourage this court to apply a de novo standard of review even under an abuse of discretion standard. There's a reversible error here. Did he take the credibility of the witnesses into consideration in making his determination concerning admissibility? I saw nothing in the hearing on the motion that it involved a credibility analysis or determination by the trial court. There was a proffer of evidence. The state's motion included a proffer of what the testimony, the writings, and the e-mails would include, but there was never any discussion by the trial court that I recall saying I find these to be credible. In fact, a determination of reliability is no longer part of the Illinois Court of Evidence and the judge doesn't have to go there. I don't want to spend a whole lot of time on standard of review, but doesn't the court necessarily abuse its discretion if it applies and properly applies the law? Yes, I think you get to the same place. And I think that's what I'm trying to say when I say de novo includes in this case the misapplication of the law. And why is this not state of mind evidence? The state of mind exception is contained in Illinois Rule of Evidence 803.3b. And that allows state of mind evidence, but there is an exception to that and that's included in Subsection or Paragraph B, which provides that the hearsay exception for admissibility of a statement of intent is, excuse me, a statement of declarance of then existing state of mind, emotion, sensation, or physical condition to prove the state of mind, emotion, sensation, or physical condition of another declarant at that time or at any other time when such state of the other declaring is an issue in the action, that is excluded by the rule. And that's what these statements of Ms. Pearson did in this case. They introduced Ms. Pearson's state of mind and then transferred that state of mind to the defendant in the form of his motive evidence. Well, separate apart from the statements of the victim to people, let's talk about these notes a little bit. And is there a, couldn't a reasonable jury infer that the defendant read these notes and therefore it would be proper motive evidence? They could infer that, but it's still admitted as the state of mind of the defendant. That was the basis that they were admitted in the trial court. But not exactly state of mind, though, would it? I mean, if the notes indicated the victim's intent to break up with the defendant, that isn't exactly state of mind. And then if the defendant read those notes, he had the knowledge and then he acted on the knowledge. So it isn't quite the same thing, is it? Well, there's a line of cases that says that statements such as what I think you're talking about are not offered for the truth of matter asserted if they go to show the effect on the listener. Okay, that's a separate line of cases and a separate theory of admissibility. And that's not what happened here. These were admitted as state of mind evidence. So the jury instruction given was given for state of mind. Right, and I wanted to come to that eventually and say, you know, when these were admitted as a state of mind and you instruct the jury to consider them for motive and under that theory of state of mind, then you've cemented the air. You can find other theories of admissibility to say it could have come in under this theory. It possibly could have come in in this theory, but we have to look at how they were actually used in this case. The state argued that these statements go to show motive. The jury was instructed to consider them for the state of mind of the defendant. The air is locked into place at that point. It would be improper for this court to come back and say these could have been admitted to show the effect on the listener, but that's not how they were used. That's not how the jury was instructed to use them. And that's the reversible error in this case. The improper use of these statements. Wasn't the instruction half right, though? Again, if a reasonable jury could have inferred that the defendant read these in that form of the motive, the instruction was state of mind of the victim and motive of defendant, correct? That was the instruction, yes. Right, so wasn't the instruction half right? Well, that means it's half wrong. When you tell the jury that they can consider this for an improper motive, I don't know that some degree of legality of that instruction cures the improperness, the impropriety of the error. I think that you still have the error when you're told that you can use these for an improper manner. You can presume, I think it's reasonable to infer, that the jury used them how they were instructed to use them incorrectly. Was Coleman wrongly decided in that regard? Well, I think Coleman's part of one of those line of cases, I think. I read that as the cases we were discussing about effect on the listener. Well, no, they talked about state of mind and motive in Coleman. That's what the court talked about in Coleman, was state of mind and motive. And again, it was state of mind of the victim, and then, again, a reasonable jury could have inferred that the defendant was aware of the to-do list, and that was motive on the defendant. Yes, I think Coleman was wrongly decided. If you shepherdize Coleman, you're not going to find other cases coming along with that. There's a much more persuasive and widely applied line of cases, Lawler, Cloutier, and those cases were incorporated into the new rule of evidence, 8033B. They didn't incorporate Coleman into the new rule of evidence, and the rules of evidence took effect January 1st of 2011, which predates, or which came after all of these cases. You know, and they also didn't argue in Coleman. The defendant attacked his conviction, and the issue raised in Coleman is different than what we're seen the note that said the to-do list that included to get a divorce. Well, the jurors had made a reasonable inference based upon the location of those notes in Coleman. They did find it at the scene, yes, and her bags were packed, and there were suitcases. The suitcase was there. Yeah, and so the argument was, well, there's no indication the defendant knew of this. The reviewing court, the first district, said, well, there's circumstantial evidence that he did. They never argued that these become offered for the truth of the matter asserted rather than under the hearsay exception, and that's what we're arguing here. When you admit Lawler stands for the proposition that if you allow these statements in under the state of mind exception, they're not offered for the truth of matter asserted, but the only way to use them for motive is to assume the truth of them, and they become offered for the truth of the matter asserted, and therefore, they're no longer admissible under the state of mind exception. Thus, it's an abuse of discretion. I'm sorry? Thus, it's an abuse of discretion. Yes, yes. So the Lawler, Cloutier, Illinois rule of evidence line of cases is much more applicable here because when you use these, when you admit one person's statements to show another person's state of mind, you've committed reversible error. That's what the rule of evidence does not allow. That's what the Illinois Supreme Court has said in its line of cases on this matter, that that is error. That is the improper use of these outer court statements offered as under the state of mind exception. So Lawler, Cloutier, Chevalier, these cases, there was no evidence that the defendant knew of the victim's statements, correct? You know, yes and no. I think that there's some cases that say that these statements can come in to rebut a defense, which is not what we have here. Well, those are the statements, those are the cases the state cites. I'm talking about the three cases that you're relying on. No, in those cases, there's no evidence. I think Flores is one of the cases that precedes Lawler and Cloutier, which is important in the development of this line of cases. And I think that there, there was some indication that the defendant had admitted knowledge of the facts that they were trying to get in under the state of mind exception. So that's why I answered that question the way I did. So let's say the state of mind evidence is improperly admitted. How is this not harmless there in light of the totality of the evidence presented here? I think that if you take out all of the, first of all, just the overwhelming nature or the overwhelming volume of the statements, they had five separate witnesses who testified to statements. You had a series of emails, you had these notes. That's, that's an awful lot of state of mind evidence. We're seeing a reversible error where like two comments come into play in Munoz in the 2010 case out of the first district. First of all, just the sheer volume. If you take all that volume of improperly admitted hearsay out, you're left with no further evidence of motive. Motive is a very powerful factor in these cases. And if you take out all of the inadmissible evidence here, there is no evidence of motive. Um, you know, I mentioned Munoz. Munoz makes that observation about when you improperly admit evidence, um, to show motive that that's the, they say it's clear. It's clear that when you improperly show motive, you've, you've committed error. Um, the remaining evidence is circumstantial in this case. Uh, there's, if you take the motive out, the jury has a, a case of circumstantial evidence only. Um, I think that contributes to the, to a requirement that this not be found as harmless error also. You want to get to the second issue at all? Yes, Your Honor. I, uh, I don't have much to add more than my group, but you know, I, it's an ineffective assistance claim. We all know there's two prongs of Strickland, the Calhoun, Mabry, Brayboy, some of the cases coming out of the first district. Well, you know, I, I would argue that there's no, um, reasonable basis for a, for defense counsel to, um, not ask for separate verdicts. What there's, there just seems to be no strategic basis for that. I, I think the deficient, the risk of exposing a defendant to, first of all, a non-unanimous verdict is, means a reasonably competent counsel would request separate verdict forms and separate instructions. And then also the, the, the error that we're complaining of here, the, um, exposing your client to, to a consecutive sentence, there's no, no reasonable attorney would do that. Well, but the defense, excuse me, the, the defendant didn't commit the offense at all. And so in light of that, isn't the decision not to offer separate, uh, theories of murder, uh, a tactical decision? I, I don't see how it is. I mean, if it, the state argued in closing and Smith supports the, the, the finding that you don't have to have unanimous verdicts on any of the three, um, theories of murder when you merge them into a single verdict form. And I, I'm just at a loss to understand why a defensive attorney would not require a unanimous verdict on the single theory of murder. Maybe, maybe it was going in all or nothing as justice, you know, related to in the Smith case, isn't Smith a little different than the case that we have here that in Smith, that is where the court refused to give the separate, um, verdict forms. Isn't that correct? Yeah. But the effect on the defendant is the same. Um, he's deprived of the right to have unanimous jury verdicts and he's exposed to, um, a consecutive sentence on the underlying felony for felony murder. Have you seen any cases that have extended Smith to this situation where the defendant does not offer? Not that I'm aware of. No. Mr. Kirkland, thank you. We'll have time for a bottle argument. Thank you. Mr. Jacobson, you may proceed. Well, your Honor, Mr. Residing Justice, and as always may it please the court. Um, I think that the striking difference between the state's case and the defendant's case on appeal is that the defendant has a lot to prove and I think he goes a little bit too far in proving it and it almost becomes a filibuster, at least in our argument this morning on three different issues. The first being standard of review, the second being state of mind exception, and the third being the verdict forms. As the standard of review, I would say that the defendant has basically staked out an untenable position that any evidentiary ruling he does not agree with is an error of law that would be subject to de novo review. The case cited in the state's brief, namely People v. Williams, explained that when the witness testimony in the context of a motion eliminate, the trial court is exercising its discretion. And so because the court has applied the law to the facts before it, independent of any credibility determinations it has, the state made an offer of proof, the defendant accepted the offer of proof, and the court applied the law to the facts of the case. I don't see how the defendant can stake out that position without saying that the trial court did not exercise its discretion. And in this case, that's precisely what the court did. So with respect, there's absolutely no support for the defendant's position that the standard of review here should be de novo. Regardless, I do agree with the defendant on the point that whether it's abuse of discretion or de novo, the result is going to be the same. The evidence in this case, insofar as the state of mind exception is concerned, was properly admitted. Why do you submit that it was properly admitted? Well, first, I'd like to, let me, I don't want to talk cross purposes, and I think it's very difficult to do that when I feel the defendant is starting from the wrong premise. The defendant starts from the premise that this evidence was only admitted to show the victim's state of mind and follows that up with the notion that the victim's state of mind was not independently relevant. The problem with that is, first, this evidence was admitted to show the victim's state of mind and the defendant's motive, because the victim's state of mind increased the likelihood that she communicated this information to the defendant, her intent, her plans, her feelings, which in turn gave the defendant a readily understandable, a recognizable, I should say, motive for murder. Does that apply to the statements of the witness? Let's separate out the notes that were found here and the statements of the witnesses that testified. If we separate those two and look just at the statements of the witnesses, there's no evidence that was presented that the defendant was aware of these conversations. That's true. That's true. So doesn't this fall into the Chevalier category? No. Obviously, I would say it's a little bit more like Coleman, because if the declarant is telling not just one or two people, but multiple people about her intent to break up with the defendant, about her feelings about the relationship, I think the sheer number of people that she told increases the likelihood, independent of the notes, that she communicated that information to the defendant. I think it's analogous to the friends that were spoken to in Coleman, as well as the fact that the wife in Coleman had packed her bag, her military dress uniform. That is all evidence that increases the likelihood, and not about the effect on the listener, the person who heard the statements, but the No, no. I'm saying independent of the notes. But she called him that night. She came home. She changed her clothes. She told him he didn't have to leave. So I'm not sure how you get there from those conversations to what actually what she did that night or said that night. Okay. My personal belief is that all the evidence should be considered together. Her state of It increases the likelihood of the defendant's motive. Justice Burke asked me just about her statements to her friends, so I was kind of limited by the question. It's an unfair attack on the question. That's why I was answering in that way. I would say that all of the evidence taken together, and the reason why this was relevant is simply because it all increases the likelihood. And of course, where the state is required to prove every material element of the case, one of the material elements here was the defendant's motive, of course. And the victim's state of mind increases the likelihood that he knew this was a dying relationship, which in turn supplies his motive. You called motive an element? I'm sorry. Is motive? I don't think that. Is it an element of the offense? No. Is it something that looms large in every criminal prosecution? Yes. So let me put it this way. Would we be allowed to admit irrelevant evidence regarding motive? Absolutely not. But here, what what keeps all the evidence within the confines of 8033 and the state's obligation to present competent evidence is simply that it was relevant in this case, that it was relevant to his motive. So it's not. And what makes it relevant to his motive? Because it increases the likelihood that he was aware that he was about to be dumped or was in the process of being dumped. That she told others? I'm sorry, what's that? That she told others? Yes. The sheer number of people she told? The sheer number of people, yes. Yes. I'd like to be clear. His argument is not the state admitted too much evidence on this point. It's simply that this shouldn't have been admitted, that her state of mind was not relevant. He says it wasn't relevant. We say it absolutely was relevant. And that was the argument the trial court accepted. And I'd like to note, the defendant's argument is based on the idea that this was admitted only for state of mind. The trial court, in ruling on the state's motion in Lemonade and in instructing the jury on each piece of evidence, said this is admitted for the victim's state of mind and as it bears on the defendant's motive to commit murder. So it was not, I think it's wrong to, I think it's wrong to look at this in artificial isolation. This evidence, unlike Lawler, Houdier, Floyd, this evidence had relevance, it had connections to other aspects of the case, it had certainly connections to other statements that the victim had made. So to view it in artificial isolation is why I said, I sort of feel like we're talking cross-purposes. You would agree that Lange and Ross that are cited in your brief are distinguishable from this case in that in Lange and Ross, that evidence was being offered to rebut something that was put forth by the defendant. Here we don't have that. Yeah. And the defendant made that point about Coleman too, because in Coleman, I think at one point, the defendant in Coleman didn't claim action, I think he claimed self-defense. And so the victim's state of mind evidence of Coleman was admitted for the purpose of showing the victim's state of mind, for the purpose of showing the defendant's motive, and for the purpose of rebutting the defendant's claim of self-defense. So I would say Lange and Ross are distinguishable in that regard, absolutely. But to say that about Coleman would be incorrect. I mean, that's evidence that was relevant, or that was admissible for two reasons that had nothing to do with the defendant's claim of self-defense. Let me put it a different way. A victim's state of mind does not become relevant if and only if the defendant asserts self-defense. I mean, the victim's state of mind is relevant because it bears on the defendant's motive. Is that a better way to put it? Sure. Well, I think Coleman supports your position, and I think counsel recognizes that because he indicates Coleman was wrongly decided. Yes. And as to I was a little puzzled. I don't understand how 8033 did not incorporate Coleman. I don't think rules of evidence incorporate cases. I mean, certainly committee notes will refer to longstanding Illinois Supreme Court precedent, but I don't think there's anything about 8033 as codified that is inconsistent with Coleman. So I don't think the Illinois Supreme Court rules of evidence committee, and Justice Hudson could probably speak better to this, but I don't think it's a good law, in which case it's a bad law, for us to know the difference when we see it. With respect to the ineffective assistance. Yes. Well, this is, again, I just, the only word I can think of is filibuster. I mean, I cited three cases of five. Brayboy, Mabry, Moore, Allen and Calhoun are the five first district decisions all within a couple of months of each other, all denying the exact same claim on performance grounds. I don't know how you don't respond to that. And I mean, the defendant never says anything about it in the reply brief. He attacks the state's argument about prejudice. And of course, we can talk about that separately, but I, well, this is, this is the problem that I have. The first first district case, Brayboy talks about how Smith is distinguishable, that the error in Smith was the defendant asked for the separate verdict forms and the trial court did not give them. I mean, it wasn't the issue about the trial court's response. I mean, the defendant asked for them. So that's, and I understand, I think I understand the defendant's argument that the defendant is the same. I think all defendants who've been convicted probably have a similar feeling of kinship, maybe argumentatively, but I don't understand how one can look at Smith, make the ineffective assistance of counsel argument based solely on Smith. The only case cited in the defense opening brief, ignore the five published first district appellate court opinions that three of which are mentioned in the state's brief and then proceed in the reply brief as though neither Smith nor the cases cited in the state's brief were ever talked about. And then just jump right to the prejudice problem and never address the issue of the fact that five courts have ruled that this is not deficient performance. So I, I, I, I don't really, like I said, I just, I don't want to talk cross purposes, but at the same time, I don't feel as though there has been a response to that on the merits. You are getting the alternative on that issue that the evidence can support convictions for felony murder and the underlying felony. Did, did you being the state sufficiently differentiate between the two offenses in the charging document to satisfy Crespo? Yeah, I believe we did. And how did you do that? Well, I, I, I should say it has more to do with the specificity in the felony murder indictment than it does in the, the, the felony murder indictment based on the predicate felony of aggravated arson, aggravated arson, as opposed to the freestanding aggravated arson count. The freestanding aggravated arson count said, actually let me, let me back up for a second. The felony murder charge based on aggravated arson said, defendant set the fire at 597 Telluride Drive, which caused the death, which in fact caused the death of Karen Pearson. The aggravated arson count said the defendant set the fire at 597 Telluride Drive, specified the statute and made a reference to the fact that he knew or reasonably should have known that the building, that the building or structure was occupied. And so when you have a citation to a statute, a statute that specifically addresses, um, I think a lot, let me, let me, let me count it back up for a second. I would have to say this arson is different. And the reason arson is different is because fire spreads. And I think the context here is important. If we were talking about an arson charge on a single family dwelling at the top of a bucolic hill that's surrounded by nothing, it might be unreasonable for a defendant or for the state in that circumstance to charge the defendant with aggravated arson based on the fire spreading to buildings that he would never, that no defendant or no arsonist would ever reasonably anticipate would have gone up in flames. But isn't that all the more reason why instead of just listing her unit, it should have been plugged with more specificity? Let me, let me put it this way. Could it have been plugged with more specificity? Absolutely. Was the amount of of the, of the victims to the charges given that, and that's not an analysis that one makes just looking solely at the charging instrument. I mean, you, you look at the factual scenario, the surrounding circumstances, the factual context, look at the state's theory of the case and how they presented the theory of the case. Did they present a theory of the case that other people were in this building and other people were, yes, there was there. Well, there was ample testimony. Defendant had contact with his neighbors earlier that immediately after the fire were outside on a cold winter night watching their houses burn down. So I would say there was, if you want to, because there were two different ways of looking at it, right? There's, there's, were the charges sufficient to give the defendant notice, to put him on notice of what he was being asked to account for or answer to? And then did the evidence at trial live up to those charges? And I would say that both of So, um, respectfully, I, I, I do think unlike the five published, um, first district cases addressing this issue, which dispose of entirely on performance grounds, I looked at it because of the unique circumstances of this case. And I thought that there was a very strong argument to be made on prejudice, particularly in light of the comments, the trial court made at sentencing when, when the defendant made his argument that the intentional murder and the aggravated arson charge, the freestanding aggravated arson charge should merge under one act, one crime. The trial court found, and this, I mean, I didn't come up with this rationale. This was the trial court's rationale in handing down the second sentences for the defendant said the aggravated arson charge was specific, was specific enough to indicate that that was for conduct for, for the conduct that caused the damage to the, to Karen Pearson's As, um, in contrast to the intentional murder charge, which of course clearly went to the death of Karen Pearson. So unlike those five first district cases that dispose of this entire argument on performance grounds, I also felt that there was a basis to address it on prejudice. This court does not need to decide that part of the issue though. I think, I think the defendant has a big obstacle in front of him to overcome, uh, on performance grounds. And I don't think that he's met that in this case. Is there no further questions? Thank you. Thank you, Mr. Jacobson. Mr. Kirkland, what about all arguments? Why don't we start off by, um, discussing counsel's argument that the indictment was specific enough to satisfy Crespo? Well, I, I think there's a preliminary question before you get to Crespo and that's King. Um, you know, the one act, um, you know, you have to distinguish physical acts or we're not just, uh, um, jumping straight to Crespo and addressing, uh, consequences of a single act and say there's multiple consequences. Um, I, I don't recall any evidence at trial that there was more than one physical act of, of, of indicating starting of a fire. Um, you know, you still have the one act, one crime without even getting to the question of how the state tried to, to apportion X. You know, if you look at like the, um, home invasion, you know, you don't get a separate home invasion for each person in the house, um, for entry into an unoccupied dwelling. Um, it's one physical act of entry. Um, I, I think that it, it skips a step to go straight to Crespo. Um, regarding the first issue on the, um, inadmissible hearsay, you know, we've, we've talked about a lot of time talking about the standard of review. And I think it's fair to say that the abuse of discretion standard does not license the court, does not license a trial court, um, to, to ignore rules of evidence and to ignore Illinois Supreme Court, um, precedent on evidentiary issues and, um, disregard the case law on admissibility of hearsay statements and applying, uh, exceptions to the hearsay rule. I, that subsumes the whole evidentiary process and, and asking for exclusion of evidence. If you just say that everything is within the discretion of the trial court, we have laws to guide the use of discretion to disregard the Illinois Supreme Court cases and the Illinois, um, rules of evidence for which were recently enacted. You know, I want to talk to you about this notion that these are admissible to show that Miss Pearson carried out her intent. I'd like to read to you a portion of the committee commentary of Illinois rule of evidence 8033. It says consistent with prior Illinois law. Rule 8033B provides that the hearsay exception for admissibility of a statement of intent as standing to prove the doing of the act intended applies only to the statements of intent by a declarant to prove her for future conduct, not the future conduct of another person. And that's what's happening here. They're, they're taking her statements and saying, well, it shows her intent to carry through these statements and then transposing that to the defendant and say, see, that's his motive. You're transferring that state of mind that, and you can't do that. The, the, the rule is set up to exclude that 8033, 8033B specifically excludes that, you know, at the motion, um, in limiting the trial court says at one point it says, uh, okay, 8033 says these kinds of statements are admissible admissible and there are some exceptions. He never looked at those exceptions. He never looked at B and said, you can't admit the statements of one person to show the state of mind of another person. And that's exactly what the state wants to do here. They want to, they want to ascribe motive by violating the rule of evidence in these longstanding cases. You know, I think the first district got it right. You know, they had a really clear summary of the problem that's present in this case in people versus Munoz in 2010. So the only possible relevancy of these out of court statements would be to establish motive on part of the defendant to kill her. As such, the sole function in admitting these hearsay statements would be to use the state of mind hearsay exception as a backdoor to convey the hearsay of the out of court declarant to the jury for the truth of their patent contact content rather than as a basis for the latent content in establishing the victim's own state of mind. That is precisely why those statements are not admissible since any use of them to establish the defendant's motive would be a use to establish the truth of their content, which is exactly what the hearsay rules of exclusion are designed to avert. That's what's happening here. They're trying to backdoor the defendant's motive through the victim's state of mind statements. In a real clean case, that statement of loss is very easy to apply. But then when you start getting into a case that's a little grayer area where you have state of mind evidence that is linked to motive by evidence that the defendant knew or reasonable inference that the defendant knew of the victim's state of mind. I don't think that this is one of those intent or excuse me, effect on the listener cases. I think that one of the cases is separate from what we have here. I mean, effect on the listener and motive. I mean, again, those things kind of go hand in glove, don't they? I mean, if we're talking about a defendant committing a criminal act based upon his or her knowledge, okay, I mean, that's motive. That's motive evidence. But it's also effect on the listener. So I mean, it's really the same thing, isn't it? And what's the difference? You keep trying to separate these two out. I don't know, you know, could a reasonable jury infer that he knew of this? I, you know, you can say that about any piece of evidence that the jury is making inferences from a piece of evidence. I, there's no evidence here that he knew of that. There's no direct evidence of this. Isn't there a lot of circumstantial evidence that the jury heard about their, her living away? She spent the weekend prior at her mother's. They were engaged in an argument moments before the fire. He speeds away and then these notes are found saying basically get out, move out. That's still her state of mind though, to show his motive. If he knew about it, you know, he reads this note, forget about her state of mind. He reads this note and these, you know, whether that's true, whether that statement is true or not, whether she, it was true that she wanted him to leave or not. He reads the note, he acts on the note. How's that improper evidence? We don't know. What if there was evidence that he actually read the note? Would this be admissible? Would  Yes, I think that would be admissible. All the statements to the witnesses and all that, but let's just talk about these post-it notes that were found in general in the living room kitchen area where the body was found. Let's say there was evidence that he read those notes. He made a statement to the police afterward. I read those notes. Would those notes be admissible? Then you have a much cleaner case. I know you have a cleaner case. Would they be admissible? Yes. Okay. Now, if you have evidence that's presented where a reasonable jury or a jury could make a reasonable inference that the person read those notes, why is that different? I don't know that you can... If I recall correctly, these notes were found inside of a notebook. Is that... I'm trying to recall the facts of the case. I think they were found inside of a notebook. I know they were found in the... I know they were found in the kitchen living area. Right. Right. Inside a notebook. I mean, that's a big leap to say that he saw these notes that were recovered from inside a notebook. These were not laying out. They weren't stuck to the bathroom mirror where he would be sure to see them. These... You know what? That's what I mean about you got to be careful inferring what the jury made of this evidence. So, you know, I don't think it's as clear-cut here. You know, in the other cases where the note was right there near the victim, you know, then they say, well, that's circumstantial evidence that the defendant saw the note. But I don't think you got that same degree of certitude here. You know, you've got people going through notebooks and finding some papers stuck inside notebook pages. That's not a good enough inference to affirm this case on. Your Honor, for the reasons cited in our argument today, we would ask this court to reverse Mr. Hill's conviction, prefer to remand this matter for new trial, and the alternative, please vacate his sentence for aggravated arson. Thank you. The court would like to thank both attorneys for their argument today, and the case will be taken under advisement. We'll take short recess.